UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LAYTON K. PRICE**                                                              **CIVIL ACTION**

**VERSUS**                                                                       **NUMBER: 21-2253**

**GALLIANO MARINE SERVICE, L.L.C., ET AL**                                       **SECTION: "L"(5)**

## ORDER AND REASONS

Before the Court are three motions. Defendants' motion *in limine* to exclude the opinions of (1) Joyce C. Beckwith, Plaintiff's vocational rehabilitation counselor, and John Theriot, Plaintiff's expert economist, R. Doc. 75. Plaintiff opposes this motion. R. Doc. 87. Plaintiff's motions *in limine* to exclude the opinions of (2) Christopher Karentz, Defendants' maritime liability expert. R. Doc. 77, and (3) Nancy Favaloro, Defendants' life care planning expert, and Kenneth Boudreaux, Defendants' economic damages expert, R. Doc. 78. Defendants oppose these motions. R. Docs. 83 & 84. Having reviewed the parties' arguments and applicable law, the Court now issues this Order and Reasons.

I.   BACKGROUND

Plaintiff Layton Price filed his Seaman Complaint on December 8, 2021, seeking damages under the Jones Act for injuries he allegedly sustained on October 30, 2021. R. Doc. 1 at 1. Plaintiff alleges that he sustained injuries due to the negligence of Defendants Galliano Marine Service, L.L.C. and Offshore Service Vessels, LLC while working as a seaman aboard the M/V LANEY CHOUEST in Port Fourchon, Louisiana. R. Doc 23. at 2. Specifically, Plaintiff alleges that while he was handling a mooring line, his hand was suddenly pulled into a capstan, which Plaintiff alleges was due to the captain's order to surge the line by hand, despite excessive tension, instead of engaging the capstan and mechanically paying out the line. *Id.* at 3. Plaintiff

1

alleges injuries to his right thumb, hand, wrist, forearm, shoulder, and chest, among other body parts. *Id.* at 2-3.

Plaintiff asserts a claim for Jones Act negligence based on Defendants' alleged failure to provide a safe work environment, failure to provide adequate safety equipment and gear, failure to properly inspect and maintain the vessel, and for operating the vessel in an unsafe manner. *Id.* at 4. Plaintiff also asserts a claim for unseaworthiness, alleging that the M/V LANEY CHOUEST was unseaworthy because the vessel had an incompetent master and crew, there was a malfunction of the mooring equipment, and the vessel lacked adequate safety equipment. *Id.* at 5. Finally, Plaintiff asserts a claim for maintenance and cure, alleging that, under the General Maritime Law, he is entitled to the payment of maintenance and cure until he reaches maximum medical cure, and that Defendants wrongfully refused to provide maintenance and cure. *Id.* at 5-6. Plaintiff additionally seeks damages for prolongation or aggravation of injuries, pain and suffering, and additional expenses caused by the delay in receiving maintenance and cure. *Id.* at 7. Plaintiff also seeks punitive damages and attorneys' fees. *Id.* at 8. Plaintiff seeks further damages for past and future medical expenses, pain and suffering, mental anguish, lost earning capacity, and physical disfigurement and impairment. *Id.* at 9.

In their answers, Defendants generally deny Plaintiff's allegations and assert affirmative defenses including that Plaintiff's alleged damages were caused by Plaintiff's own fault or negligence or that of a third party and that Plaintiff is not entitled to maintenance and cure. R. Doc. 7; R. Doc. 28.

## II.     PRESENT MOTIONS

### a.  Defendants' Motion *in Limine* to Exclude Testimony and Evidence Related to Wages. R. Doc. 75.

Defendants Galliano Marine Service, L.L.C., and Offshore Service Vessels, LLC, move this Court to exclude from trial the testimony of Plaintiff's proffered vocational rehabilitation counselor, Joyce C. Beckwith, and economist, John Theriot. R. Doc. 75. at 1. Defendants argue that the testimony fails to meet the requirements of Federal Rule of Evidence 702 governing expert testimony, asserting that Beckwith and Theriot's opinions are anchored on speculation and their subjective beliefs as opposed to sufficient facts, data, or reliable principles. R. Doc. 75-1. at 23.

Defendants contend that Beckwith's opinion on Plaintiff's future earning capacity are "speculative and unfounded" because Plaintiff did not intend to work in the industry for a "meaningful period of time" nor did he "take[] any concrete steps on the difficult road" to become a chief engineer *Id.* at 21, 24. Defendants further argue that Plaintiff's work history and health issues undermine his merchant mariner credentials.[1] *Id.* at 6. Accordingly, Defendants argue that Beckwith and Theriot's justification for lost wages based on the notion that Plaintiff was on track to promote through the ranks of QMED to Chief Engineer in four years are "unsubstantiated." *Id.* at 8.

In opposition, Plaintiff argues that Beckwith and Theriot's opinions are based on sound methodology and substantial evidence from the record. R. Doc. 82. Plaintiff argues that there is no bright line rule to calculate the extent of a plaintiff's loss of future earnings; however, courts

---

[1] Defendants' motion stresses that Plaintiff obtained his merchant mariner credentials fraudulently because he failed to disclose his substance abuse issues and other medical history such as backpain, anxiety, depression, etc. R. Doc. 75-1. at 6. Because these arguments do not directly address the reliability of the witness testimony, the Court will not address them.

3

will look to a variety of factors including potential future wage increases. *Id.* at 10. Further, Plaintiff contends that Beckwith, in addition to several meetings with the Plaintiff, considered Plaintiff's vocational impact under the Commission on Rehabilitation Counselor Certification guidelines, the U.S. Department of Labor occupational methodology, as well as other health, safety, and welfare considerations. *Id.* at. 11. Accordingly, Plaintiff asserts that, based upon the evidence, the Court should deny Defendants' motion and allow Plaintiff to present his loss of earning capacity claim at trial for the jury to decide. *Id.* at 25.

In response, Defendants reiterate their earlier claims that Plaintiff fraudulently obtained his merchant mariner credentials and his intention to leave the industry. R. Doc. 96. Defendants further argue Beckwith did not conduct adequate research to form her wage calculation. *Id.* at 17. Accordingly, Defendants ask that Beckwith and Theriot's testimony be excluded to protect the jury from "unfounded expert opinions." *Id.* at 19.

      **b. Plaintiff's Motion *in Limine* to Exclude or Limit Proffered Liability Expert Testimony of Christopher Karentz. R. Doc. 77.**

Plaintiff Layton Price moves this Court to exclude or limit from trial the testimony of Defendants' proffered marine liability expert, Christopher Karentz. R. Doc. 77. Plaintiff argues that the testimony fails to meet the requirements of Federal Rule of Evidence 702 governing expert testimony, asserting that Karentz's opinions are not based on sufficient facts or data. R. Doc. 77-1. at 9. Plaintiff further argues that Karentz's opinions "are derived from credibility determinations where he usurps the role of the jury" and include conclusions of law, all of which are prohibited by FRE 702. *Id.* at 12-14.

Plaintiff argues that Karentz's opinion is unreliable because Karentz never conducted an inspection of the vessel at issue in this case yet his opinion states that Plaintiff's prior knowledge, experience, and onboarding procedures should have prevented his injury. *Id.*

4

Plaintiff contends that Karentz's opinion ignores the Defendants' post-accident investigation reports, which state the cause of Plaintiff's accident was the vessel captain's failure to conduct a compulsory pre-job risk assessment. *Id.* at 11. Plaintiff further argues that Karentz steps into the shoes of the jury and makes credibility determinations in his testimony when opining that Plaintiff "should have '<u>clearly</u>' stated" to the vessel's captain his unfamiliarity with devices used in the mooring operation. *Id.* at 12. Lastly, Plaintiff argues that Karentz's testimony includes conclusions of law, in violation of Federal Rule of Evidence 704(a). *Id.* at 13-14. For example, Karentz's states in his report that "the preponderance of fault in this matter lies upon Wiper Price." *Id.* at 13.

In opposition, Defendants argue that Karentz's opinions are based on reliable principles and methods. R. Doc. 83. Defendants contend that in forming his report, Karentz relies on his extensive background as a professional mariner of over 40 years, the sworn testimony of the Quality, Health, Safety, and Environment coordinator and Defendants' corporate representative, and other records made available to him. *Id.* at 2-5. Accordingly, Defendants argue that not only does Karentz's report meet the standard set forth in FRE 702, but Plaintiff's concerns regarding Karentz's factual basis can be addressed on cross-examination. *Id.* at 10.

In response, Plaintiff argues that Karentz failed to consider the totality of evidence when forming his opinion. R. Doc. 98. Specifically, Plaintiff alleges that Defendants never provided Plaintiff the requisite training or explanation of the risks associated with the mooring operation and Karentz's report is missing this information. *Id.* at 2-3. Thus, Plaintiffs ask that Karentz's testimony be excluded because of its "flawed methodology." *Id.* at 4.

### c. Plaintiff's Motion *in Limine* to Exclude or Limit Proffered Expert Testimony of Defendants' Life Care Planning Expert and Expert Economist. R. Doc. 78.

Plaintiff Price also moves this Court to exclude from trial the testimony of Defendants' proffered life care planning expert, Nancy Favaloro, and economic damages expert, Kenneth Boudreaux. R. Doc. 78. Plaintiff argues that the reports and calculations conducted by Favaloro and Boudreaux are based on unreliable methods. R. Doc. 78-1. at 5. Plaintiff contends that "based on her incorrect recitation" of meetings with medical professionals, Favaloro's life care plan fails to consider future psychiatric and medical care as well as surgical expenses that Plaintiff's treating physician and defendants' medical expert deem necessary. *Id.* at 6-7. Accordingly, Plaintiff argues that Favaloro's plan and Boudreaux's opinions—by extension of his reliance on Favaloro's calculations—are "not based on sound methodology" because they "artificially reduce[]" the value of funds needed for Plaintiff's future medical care. *Id.* at 8-9.

In opposition, Defendants argue that Favaloro and Boudreaux's testimonies are well-founded. R. Doc. 84. Defendants contend that Favaloro's plan "was painstakingly and meticulously prepared" after reviewing IME reports of physicians who examined Price after the incident and her conferences with them. *Id.* at 6-10. Defendants further argue that the Favaloro's plan considers Plaintiff returning to "pre-incident psychiatric condition" in one to two years, "envisions a scenario where Price's shoulder complaints resolve through conservative treatment," and no additional thumb and wrist treatment is necessary as recommended by the medical experts. *Id.* at 7-9. Thus, Defendants contend that to the extent that Plaintiff will require additional time to return to pre-incident psychiatric treatment or another shoulder, thumb, or wrist procedure is ultimately a matter for the jury to resolve after cross-examination by the plaintiff. *Id.* at 9-10.

In response, Plaintiff stresses his previous claims that Favaloro's life care plan is flawed because it is unsupported by medical expert opinions. R. Doc. 100. Further, Plaintiff contends that Favaloro is not a licensed medical doctor. *Id.* As a result, Plaintiff argues that Favaloro's opinions should not "stand on their own" and neither should Boudreaux's as his opinions are based on Favaloro's plan. *Id.* at 2.

### III. LAW AND ANALYSIS

#### a. APPLICABLE LAW

**Federal Rule of Evidence 702**

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. The Rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Trial courts are gatekeepers of expert testimony and must determine whether proffered expert testimony is reliable and relevant before admitting it into evidence. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 596-97 (1993). An expert's proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Federal Rule of Evidence 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

The Fifth Circuit has stated that:

> "[t]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to

> determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."

*Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting 1972 Advisory Committee Notes to Rule 702). However, expert testimony should only be excluded on this basis if a court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448 (5th Cir. 1990).

**Federal Rule of Evidence 704**

Federal Rule of Evidence 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704. But "this rule does not allow an expert to render conclusions of law." *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996).

### b. ANALYSIS

Defendants have challenged the testimonies of Plaintiff's expert vocational rehabilitation counselor, Beckwith and economist, Theriot. R. Doc. 75. On the other hand, Plaintiff has challenged the testimony of Defendants' marine liability expert, Karentz, life care planning expert, Favaloro, and economic damages expert, Boudreaux. R. Doc. 77; R. Doc. 78.

The Court has determined that all experts are sufficiently qualified through their training and experience to offer expert testimonies. The Court finds that their opinions were formed using reliable methods.

Beckwith, using the same methodology in this case as she has used in several cases previously, has never been limited nor excluded because of her methodology. R. Doc. 82. at 11. In forming her report, Beckwith considered Plaintiff's vocational impact in accordance with her training, conducted several meetings with the Plaintiff, and performed an analysis of the maritime

industry. *Id.* at 11-15. Theriot's testimony, by extension, is also based on reliable methods as it depends upon Beckwith's opinions. *Id.* at 15.

In determining his opinions, Karentz relies on his extensive professional background as he has been a professional mariner for over 40 years and the sworn testimony of the Quality, Health, Safety, and Environment coordinator and Defendants' corporate representative, along with other record evidence. R. Doc. 83. at 2-5.

Lastly, Favaloro formed her report after reviewing IME reports made by physicians who examined the Plaintiff and her personal consultations with those physicians. R. Doc. 84. In turn, Boudreaux's testimony is also based on sufficient methods as it relies upon Favaloro's life care plan. *Id.*

The fact that the opposing party does not agree with the facts relied upon by the experts or their interpretation of those facts does not render their opinions irrelevant or reliable; if this matter proceeds to trial, opposing counsel may cross-examine the expert, whether Beckwith, Theriot, Karentz, Favaloro, or Boudreaux, regarding all facts in this matter and the jury may then weigh the expert opinion based on that examination.

It is "the role of the adversarial system, not the court, to highlight weak evidence"— challenges related to the basis of Beckwith, Theriot, Karentz, Favaloro, or Boudreaux's opinions are thus best suited for cross-examination, not exclusion under Rule 702. *Delta Towing, LLC v. Justrabo*, 2009 WL 3763868 (E.D.La. 2009) (*citing Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004)). Accordingly, the Court holds that Beckwith, Theriot, Karentz, Favaloro, and Boudreaux's testimonies comply with FRE 702's requirement that proffered expert testimony must be based on sufficient facts or data.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion in Limine, R. Doc. 75 is hereby **DENIED**, and Plaintiff's Motion in Limine, R. Doc 77 is hereby **DENIED**, and Plaintiff's Motion in Limine, R. Doc 78 is hereby **DENIED**.

New Orleans, Louisiana, this 27th day of September, 2023.

_____
United States District Judge